IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ELEANOR OLIVER, | ) | CASE NO. 5:11-CV-2303 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | MEMORANDUM OPINION & ORDER |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties (Doc. 12). The issue before the undersigned is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff Eleanor Oliver's application for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. §1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the decision of the Commissioner.

## I.  PROCEDURAL HISTORY

On April 29, 2008, Plaintiff Eleanor Oliver ("Plaintiff" or "Oliver") protectively applied for a Period of Disability and Disability Insurance benefits and Supplemental Security Income benefits.  (Tr. 47-48, 78-84, 91-93).  Plaintiff alleged she became disabled on April 11, 2008, due to suffering from a stroke, vision loss in her right eye, blood clots and high blood pressure.  (Tr. 98-99).  The Social Security Administration denied Plaintiff's applications for benefits initially and upon reconsideration.  (Tr. 47-50, 51-57, 60-72).  Thereafter, Oliver requested a hearing

before an administrative law judge to contest the denial of her applications.  (Tr. 73-74).  The administration granted Oliver's request and scheduled a hearing.  (*See* Tr. 76).

On September 28, 2010, Administrative Law Judge James Dixon (the "ALJ") convened a hearing in Cleveland, Ohio, to evaluate Plaintiff's applications.  (Tr. 12, 24-46).  Plaintiff appeared with counsel and testified before the ALJ.  (*Id.*).  Vocational expert, Kevin Yi (the "VE"), also appeared and testified during the proceeding.  (*Id.*).

On November 4, 2010, the ALJ issued an unfavorable decision finding that Oliver was not disabled.  (Tr. 12-19).  In reaching this decision, the ALJ applied the five-step sequential analysis,[1] and concluded that Plaintiff retained the ability to perform work which existed in significant numbers in the national economy.  (*Id.*).

---

[1]  The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability".  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1)    If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2)    If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3)    If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4)    If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5)    Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

Following the issuance of this decision, Plaintiff sought review of the ruling from the Appeals Council. (Tr. 8). However, the council denied Oliver's request, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

## II. PERSONAL BACKGROUND & MEDICAL HISTORY[2]

Oliver, born on December 30, 1961, was 48 years old on the date of her hearing before the ALJ. (Tr. 29, 47). Accordingly, at all relevant times, Plaintiff was considered a "younger person" for Social Security purposes. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c). Although Plaintiff did not earn her high school diploma or GED, she completed the 11th grade and has past experience working as a housekeeper. (Tr. 29).

On Plaintiff's alleged onset date of April 11, 2008, she presented to Akron City Hospital with "hypertensive urgency with blood pressure ranging in the 200s." (Tr. 195). Plaintiff was admitted and diagnosed with non-ST elevation myocardial infarction. (*Id.*). Oliver received a heart catheterization and stents were placed in her heart. (*Id.*). Two days after the procedure, Plaintiff complained of visual changes, but these changes did not correlate well with her exam. (*Id.*). The following day, Oliver reported that her vision changes had resolved though the vision in her left eye was still blurry. (*Id.*). She was discharged on April 17, 2008, with instructions to follow up with her physician 12 days later, and advised not to lift more than 10 pounds for the next 10 days. (Tr. 196). There is also medical evidence indicating Plaintiff suffered a stroke during her stay in the hospital. (*See* Tr. 177, 200).

---

[2] The following recital of Plaintiff's medical record is merely an overview of the medical evidence pertinent to Plaintiff's appeal. It is not intended to reflect all of the medical evidence of record.

3

Oliver presented to her treating physician, Dr. Dean Yeropoli, in April and August of 2008.  (Tr. 261-63, 264-65).  During the April visit, Dr. Yeropoli noted that Plaintiff had been doing well since her discharge from the hospital.  She denied experiencing any shortness of breath or chest pain, but still claimed to have vision changes.  (Tr. 264).  The doctor diagnosed Oliver with venous thrombosis, renal insufficiency, coronary atherosclerosis of the native vessel, hypertension, heart failure (not otherwise specified) and cerebrovascular accident.  (*Id*.).  When Plaintiff presented back to Dr. Yeropoli in August, the doctor again noted that Plaintiff was doing well.  (Tr. 261).  Oliver still denied experiencing shortness of breath or chest pain.  (*Id*).  Plaintiff's diagnoses remained the same and Dr. Yeropoli indicated that Oliver had no new issues related to her venous thrombosis, heart failure or cerebrovascular accident, nor was there any further deterioration in Plaintiff's remaining conditions reported.  (Tr. 263).

On September 17, 2008, state agency physician, Gary Hinzman, conducted a review of Plaintiff's medical record to assess her physical residual functional capacity ("RFC").  (Tr. 282-89).  Dr. Hinzman opined Plaintiff could lift 50 pounds occasionally, 25 pounds frequently, and retained an unlimited ability to push and pull.  (Tr. 283).  In addition, the doctor noted Oliver could sit and stand/walk for roughly six hours each workday, respectively.  (*Id*.).  Notably, the physician did not indicate that Oliver would need to alternate between sitting and standing to relieve pain or discomfort.  (*Id*.).  Dr. Hinzman placed no other restrictions on Oliver's ability to work.  (Tr. 284-86).  Although the physician noted Plaintiff's complaints of vision problems and shortness of breath, he found Plaintiff's statements were only partially credible because medical records showed Oliver's vision was 20/40 and that she had denied experiencing any shortness of breath to Dr. Yeropoli during her August 2008 visit.  (Tr. 287).

4

On December 30, 2008, Plaintiff presented to Craig Wood, an occupational therapist, in order for him to conduct a functional capacity evaluation ("FCE") of her physical ability to work. (Tr. 294-300).  He reported his findings in a letter addressed to Dr. Yeropoli.  (*Id*.).  Overall, Mr. Wood concluded Plaintiff gave reliable effort during testing.  (Tr. 294).  Regarding Plaintiff's functional abilities, Mr. Wood found Oliver retained the ability to perform light to medium work, as she could lift up to 30 pounds from floor level to shoulder height and up to 20 pounds from shoulder level overhead.  (*Id*.).  He added that Oliver demonstrated the ability to push and pull within the medium level as she "average[ed] 41.9 lb. of force pushing and 33.7 lb. of force pulling."  (*Id*.).

Additionally, Mr. Wood concluded Plaintiff was able to sit on a constant basis, frequently stand and occasionally walk, stoop, crouch or climb stairs.  (*Id*.).  Despite finding that Oliver had sub-average grip, palmar pinch and key pinch strength in her hands, Mr. Wood held Oliver could frequently reach, handle and finger with her right hand, and occasionally reach, handle and finger with her left hand.  (*Id*.).  In summarizing his findings, Mr. Wood commented that Oliver had a moderate balance deficiency and "should probably use a straight cane during ambulation." (Tr. 295).  He also stated that she was unable to kneel during the exam due to knee pain, had a poor tolerance for stooping and was unable to fully squat.  (*Id*.).  Finally, he mentioned that any prospective employment for Oliver would need to provide "the flexibility to sit when needed, as she appeared to become easily fatigued."  (*Id*.).

Finally, Plaintiff underwent an ophthalmological/optometric consultative examination by Dr. Mary File on March 12, 2009.  (Tr. 325-28).  Upon initial examination, Plaintiff's vision was only reported to be 20/400.  (Tr. 326).  But, after Dr. File found no pathology to support this vision loss she rechecked Oliver and discovered that she had 20/20 vision with no visual

limitations.  (*Id*.).  Dr. File commented that Plaintiff's initial cooperation during the exam was poor.  (*Id*.).

### III.  ALJ's RULING

The ALJ made the following findings of fact and conclusions of law in applying the five-step sequential evaluation process.  At step one, the ALJ found Oliver had not engaged in substantial gainful activity since her alleged onset date of April 11, 2008.  (Tr. 14).  At step two, the ALJ held Plaintiff suffered from two severe impairments:  acute myocardial infarction and late effects of cerebrovascular disease.  (*Id*.).  But, at step three, the ALJ ruled that neither of these impairments, individually or combined, met or equaled one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 14-15).

Before moving to the next step, the ALJ assessed Plaintiff's RFC to work.  The ALJ held Oliver retained the ability to perform a limited range of light work as defined in 20 C.F.R. §§ 416.967(b) and 404.1567(b).  (Tr. 15-17).  For example, the ALJ indicated Plaintiff could only occasionally reach, handle or finger with her left arm, and could only occasionally walk, stoop, crouch or climb stairs.  (Tr. 15).  Given Plaintiff's ability to perform light work within these parameters, at step four, the ALJ held Plaintiff could return to her past relevant work as a housekeeper as the job was generally performed in the national economy.  (Tr. 17-18).  Alternatively, the ALJ concluded Plaintiff could also work as a cashier or punch press operator.  (Tr. 18).  Accordingly, the ALJ found that Plaintiff was not disabled.

### IV.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform

6

"substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## V.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)*.*  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed*. Id.*  The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)*; Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387*.*  However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989)*.*

7

VI.  ANALYSIS

Plaintiff asserts one chief objection to the ALJ's decision: she contends the ALJ's RFC assessment is in error because the ALJ failed to adhere to the treating physician rule.  Plaintiff notes the ALJ assigned great weight to the FCE, but failed to incorporate all of the restrictions listed therein within his RFC assessment without good reason for doing so.  As a result, Plaintiff maintains the VE's testimony regarding her ability to return to her job as a housekeeper or to perform the positions of a cashier and punch press operator do not provide substantial support for the ALJ's ruling, as the testimony was given in response to a hypothetical question which did not accurately portray Plaintiff's ability to work.

It is well-recognized that an ALJ must give special attention to the findings of the claimant's treating sources.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). This doctrine, often referred to as the "treating source rule" is a reflection of the Social Security Administration's awareness that physicians who have a long-standing treating relationship with an individual are best equipped to provide a complete picture of the individual's health and treatment history.  *Id.*; 20 C.F.R. §§ 416.927(c)(2), 404.1527(c)(2).[3]  The treating source rule indicates that opinions from such physicians are entitled to controlling weight if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record."  *Wilson*, 378 F.3d at 544.

When a treating source's opinion is not entitled to controlling weight under this framework, the ALJ must determine how much weight to assign to the opinion by applying

---

[3] Effective March 26, 2012, sections 404.1527 and 416.927 of the Code of Federal Regulations were amended.  Paragraph (d) of each section was redesignated as paragraph (c).  *See* 77 F.R. 10651-01, 2011 WL 7404303.

8

specific factors set forth in the governing regulations.   20 C.F.R. §§ 416.927(c)(1)-(6), 404.1527(c)(1)-(6).   The regulations also require the ALJ to provide "good reasons" for the weight ultimately assigned to the treating source's opinions.   20 C.F.R. §§ 416.927(c)(2), 404.1527(c)(2).  An ALJ's failure to adhere to this doctrine may necessitate remand. Wilson, 378 F.3d at 545.

However, as its name implies, the treating physician rule only applies to opinions rendered from such sources.  See SSR 06-03p, 2006 WL 2329939, at *1-2 (2006).  These sources are referred to as "acceptable medical sources" and exclusively include licensed physicians, psychologists, optometrists, podiatrists and speech-language pathologists.  Id. at *1.  All other medical professionals fall under the category of "other sources".  Id. at *2.  While opinions from "other sources" may provide insight into the claimant's condition, they are not sufficient to establish the existence of a medically determinable impairment.  Id.  Accordingly, the treating physician rule is not applicable when evaluating opinions rendered from "other sources". Furthermore, the treating physician rule was intended to lend more credence to opinions from doctors who have treated the claimant over a long period of time.  Thus, opinions from medical professionals who have only examined the claimant on one occasion cannot be deemed treating sources, nor are their opinions entitled to any special degree of deference.  Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994).

In this case, it is important to note that while the ALJ assigned great weight to the FCE, he did so wrongly believing that the opinions contained therein were attributable to Plaintiff's treating physician, Dr. Yeropoli.  The ALJ repeatedly referenced the document as being reflective of Dr. Yeropoli's findings and opinions.  (See Tr. 16-17).  The ALJ explained that he assigned great weight to the FCE because Dr. Yeropoli was Oliver's treating physician and had a

long history caring for Oliver. (Tr. 17). Yet, as it is now clear, the FCE was not penned by Dr. Yeropoli, but by Mr. Wood, who had only examined Plaintiff on a single occasion. Defendant noted this error in its brief. But, Plaintiff did not acknowledge this error in her initial brief, nor did she file a reply brief to address the issue.

Despite this noted mistake, Plaintiff contends remand is warranted because the ALJ's RFC assessment did not explicitly account for several of the restrictions discussed in the FCE. Specifically, Plaintiff notes the ALJ's RFC finding did not address her: 1) inability to squat or kneel; 2) decreased hand grip, palmar pinch and key pinch strength in both hands; 3) vision difficulties; 4) easy confusion; 5) fatigue; 6) unsteadiness when walking; 7) need for flexibility to sit when needed; and 8) need to use a straight cane during ambulation.

Plaintiff's objections are not well-taken. As an initial matter, neither the position of a press operator nor cashier requires stooping, kneeling or balancing. *See* DICOT 690.685-041 & 211.462-010.[4] Although the Dictionary of Occupational Titles does not explicitly address whether either of these jobs requires squatting, the lack of any reference for the need of such an ability along with the direct negation of any need for stooping, kneeling or balancing, convinces the Court that the positions do not require squatting either.[5]

Likewise, Plaintiff's decreased hand grip, palmar pinch and key pinch strength in both hands is irrelevant. Despite these shortcomings, Mr. Wood concluded Oliver could still handle and finger with her right hand on a frequent basis, and could do so with her left hand on an occasional basis. These two limitations were articulated to the VE, and he testified that they did

---

[4] The transcript of the hearing before the ALJ incorrectly lists the code for the position of a press operator as DOT 690.685-104, (Tr. 41); the correct code is DOT 690.685-014.

[5] The undersigned further notes that the FCE did not entirely preclude Oliver from squatting, but rather indicated that she was unable to "fully squat". (Tr. 295).

not prevent Oliver from working as a housekeeper, press operator or cashier. (Tr. 39-41). Nor was it necessary for the ALJ to include any vision difficulties in his RFC. The ALJ credited the findings of Dr. Mary File who found that Plaintiff had 20/20 vision and no visual restrictions.

Similarly, the ALJ did not error by failing to specifically mention Plaintiff's alleged problems with confusion and fatigue in his RFC. The FCE does not refer to either of these conditions as separate and distinct limitations on Plaintiff's ability to work. Instead, Mr. Wood simply commented that Plaintiff "appeared to become confused" during some of the testing, "required additional demonstration to complete [the] tests as instructed", and that Plaintiff "appeared to become easily fatigued" during testing. (Tr. 295). When read in context, it does not appear that Mr. Wood intended these comments to create additional restrictions on Oliver's physical functional capacity. Rather, they seem to express Mr. Wood's observations during the exam, which he shared with Dr. Yeropoli. In the final analysis, these observations were necessarily incorporated into Mr. Wood's ultimate finding that Oliver retained the ability to perform light to medium work activity.

The ALJ's assessment of Plaintiff's ability to walk is also supported by the record. Although Mr. Wood commented that Oliver "became unsteady during [her] walking test" and that she "should probably use a straight cane during ambulation", the state agency physician found otherwise. (Tr. 300, 295, 283-84). He opined Oliver had a normal gait and specifically denied Plaintiff's need for an assistive device during ambulation. (Tr. 283-84). The ALJ also highlighted that Plaintiff herself admitted she retained the ability to walk for up to 50% of a normal workday.[6] (Tr. 17, 303). This medical evidence supports the ALJ's conclusion that

---

[6] The ALJ also wrongly attributed this statement to Dr. Yeropoli. (Tr. 16-17).

11

Plaintiff could perform work which required walking on an occasional basis.  Though Mr. Wood suggested that Plaintiff *should use* a cane, he reported that he was unable to actually perform a heel-toe walking balance test on Plaintiff due to safety concerns. Moreover, Plaintiff did not demonstrate that Mr. Wood or any physician had ever prescribed a cane for her.

Finally, the ALJ did not error by failing to specifically address Plaintiff's alleged need to sit as needed throughout the workday.  Mr. Wood's comment indicating Plaintiff required the flexibility to sit as needed was made in direct reference to his observations of Plaintiff's fatigue. However, he opined Oliver could stand on a "frequent" basis.  Similarly, the state agency physician opined Plaintiff could stand for roughly six hours each workday, and intentionally declined to find that Plaintiff required the flexibility to alternate between sitting and standing throughout the day.  The ALJ's ruling that Oliver could stand frequently is therefore consistent with the state agency physician's findings and with Mr. Wood's opinion.

Based upon a review of the record, the undersigned finds that the ALJ's RFC assessment is supported by substantial evidence.  "Although physicians opine on a claimant's residual functional capacity to work, ultimate responsibility for capacity-to-work determinations belongs to the Commissioner."  *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578, (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(e)(1)).  Thus, it was ultimately the ALJ's responsibility to analyze the medical opinion evidence and determine Plaintiff's RFC.  Although there may be evidence supporting a more restrictive RFC assessment, the ALJ's ruling must be upheld as there is adequate evidence supporting it.  *See Mullen, supra*, 800 F.2d at 545.   Accordingly, the VE's testimony that Plaintiff could return to either her past job as a housekeeper or work as a press operator or cashier is sufficient to carry the Commissioner's burden at step five of the analysis, as the ALJ's RFC accurately reflected Oliver's impairments.  *See Varley v. Sec'y of Health &*

*Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

Even assuming the contrary, the undersigned declines to remand this case based upon the ALJ's seeming violation of the treating physician rule.  The record clearly demonstrates that the ALJ wrongly attributed Mr. Wood's findings to Oliver's treating physician, Dr. Yeropoli.  Because Mr. Wood is not a treating physician, the ALJ's review of his opinion would not have been subject to the dictates of the treating physician rule.  Consequently, there would be no purpose served by remanding the case in order for the ALJ to articulate better reasons for declining to expressly adopt every aspect of his opinion.  Remand would be futile as Mr. Wood only examined Oliver one time and his opinions were not entitled to any particular amount of deference.  *Barker, supra*, 40 F.3d at 794; *see also Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507 (6th Cir. 2006) (no need to remand in quest of a "perfect opinion" when remand unlikely to result in a different decision).

VII.  DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the Court AFFIRMS the decision of the Commissioner.

IT IS SO ORDERED.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date:  February 12, 2013.

13